[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 06-11751
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 12, 2006
THOMAS K. KAHN
CLERK

D.C. Docket No. 04-02294-CV-TWT-1

EDWARD MICHAEL LIBMAN,

Plaintiff-Appellant,

versus

CITY OF AVONDALE ESTATES,
a Georgia municipal corporation,
CHIEF JEFF TARPLEY, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(July 12, 2006)**

Before MARCUS, WILSON and COX, Circuit Judges.

PER CURIAM:

Edward Michael Libman ("Libman") appeals the district court's grant of summary judgment to the defendants, the City of Avondale Estates (the "City"), Chief Jeff Tarpley ("Tarpley'), and Sergeant R. Tweed ("Tweed"), on all of his claims. Libman's claims stem from his arrest for receipt of stolen property. Libman is the manager of Pawn America, a pawn shop that received on pawn a jackhammer stolen from Stan Pike ("Pike"), the owner of a local construction company.

Pike reported the theft to Tweed, who proceeded to check the local pawn shops to see whether they had received any jackhammers on pawn. On two separate visits to Pawn America, Tweed was told by employees of Pawn America that Pawn America had received no jackhammers on pawn. Tweed eventually learned that the jackhammer had indeed been received on pawn at Pawn America. After hearing of this, Pike went to retrieve it. Libman required Pike to pay $125.00 to Pawn America before returning his jackhammer. Tweed was subsequently involved in two heated verbal exchanges with Libman regarding whether Libman had to provide Tweed with the pawn ticket, so that Tweed could close the investigation.

These exchanges, coupled with the lying of the Pawn America employees whom Libman supervised, caused Tweed to suspect that Libman may have been covering up his knowing receipt of stolen goods. Based on this suspicion, Tweed, with the permission of his supervisor, Tarpley, sought a warrant from a magistrate

judge for the arrest of Libman for receipt of stolen property. On the affidavit accompanying the warrant for Libman's arrest, a handwritten notation appears that states, "officer had talked to [Libman and] he denied having the item in on pawn." (R.2-46, Ex. 2.) The parties agree that Tweed never spoke to Libman until after the item was returned to Pike.

Libman was arrested for receipt of stolen property. After his arrest, the prosecution offered to drop the charges against Libman if Libman would execute a release of any civil claims that he might have asserted against Tweed. Libman agreed to the proposed settlement, and Libman's attorney drafted a release-dismissal agreement, which Libman signed. The negotiations proceeded under the supervision of the trial judge assigned to Libman's case. Pursuant to the release-dismissal agreement, the charges against Libman were dropped, but the judge required Libman to pay back the $125.00 that he had required Pike to pay Pawn America to redeem his stolen jackhammer. Tweed later wrote a note to Pike, stating, "The judge did not agree with [Libman] charging you to buy your tool back, once they found out it was stolen." (R.2-46, Ex. 2.)

Libman filed a five-count complaint in the district court, asserting claims for (1) violation of his Fourth Amendment right to be free from unreasonable seizures (false arrest), alleged against Tweed under 42 U.S.C. § 1983; (2) violation of his

Fourth and Fourteenth Amendment rights, alleged against Tarpley under 42 U.S.C. §§ 1983 and 1988; (3) violation of his Fourth and Fourteenth Amendment rights, alleged against the City under 42 U.S.C. §§ 1983 and 1988; (4) a Georgia-law claim for defamation, alleged against Tweed; and (5) a Georgia-law malicious prosecution claim, alleged against Tweed. The district court granted summary judgment to the defendants on each of Libman's claims. Libman appeals. We affirm.

The claims against Tweed for violation of Libman's constitutional rights and for malicious prosecution are barred by the release-dismissal agreement. All of the conduct that gives rise to these claims occurred prior to the execution of that agreement. A release-dismissal agreement will be enforced if the party seeking enforcement can show (1) that it was entered into voluntarily; (2) that there is no evidence of prosecutorial misconduct; and (3) that the enforcement of the release is in the public interest. *Town of Newton v. Rumery*, 480 U.S. 386, 398, 107 S. Ct. 1187, 1194-95 (1987). Here, Libman executed an agreement drafted by his own attorney and under the supervision of the trial judge assigned to the case. The release obviously serves the public interest in avoiding the expense of defending civil claims that may or may not be meritorious.

Libman argues that the handwritten note appearing on the affidavit evidences that Tweed lied during his warrant application, and that this lie constitutes

4

prosecutorial misconduct. However, this argument is without merit. The handwritten note, whether it is the result of a mistake on the part of the writer or the deliberate misstatement of Tweed, may have led to Libman's arrest, but if that fact establishes that Tweed falsely arrested Libman, it does not also establish misconduct in the criminal prosecution. Accordingly, we find no prosecutorial misconduct, and the district court properly found the release-dismissal agreement to be enforceable. Libman's claims against Tweed for violation of his Fourth Amendment rights and for malicious prosecution are barred by the release-dismissal agreement.

Libman's other claim against Tweed, the Georgia-law claim for defamation, is without merit. Truth is an absolute defense to a defamation claim. Ga. Code Ann. § 51-5-6 (2000). We can find no statement in Tweed's letter to Pike that is not shown to be true by a simple glance at the judge's order in Libman's criminal case. The district court did not err in dismissing the claim for defamation.

That leaves the claims against Tarpley and the City. We agree with the district court that these claims lack merit. Libman argues that Tarpley is directly responsible for the alleged constitutional violation because he authorized Tweed to seek a warrant against Libman. However, no evidence indicates that Tarpley directed Tweed to lie to obtain the warrant. There is nothing even remotely unconstitutional about

permitting an officer who believes he has probable cause to arrest a suspect to seek a warrant for that suspect's arrest.

To establish that Tarpley, Tweed's supervisor, is indirectly liable for the alleged unconstitutional acts of Tweed, Libman must establish that Tarpley's behavior caused Libman's alleged harm. Where, as here, the supervisor did not actually perpetrate the constitutional violation, this causal connection may be established through evidence showing (1) a history of widespread infractions that the supervisor failed to act to correct; (2) a custom or policy of the supervisor resulting in deliberate indifference to constitutional violations; or (3) direction from the supervisor to his subordinates to act unlawfully, or knowledge of the supervisor that they would act unlawfully coupled with a lack of action to prevent such acts. *Braddy v. Fla. Dep't of Labor & Empl. Sec.*, 133 F.3d 797, 802 (11th Cir. 1998). After reviewing the summary judgment record, we find no evidence of Tarpley's knowledge that Tweed would allegedly lie to obtain a warrant, and we find no evidence of any deliberate indifference to constitutional rights, whether by virtue of Tarpley's policies and customs or based on any history of infractions by his subordinates. The district court did not err in granting summary judgment to Tarpley.

Similarly, to show that the City bears responsibility for the alleged acts of Tweed, Libman would have to establish that the alleged constitutional violation

6

occurred (1) pursuant to official City policy; (2) as the result of a policy decision by a final City decision maker; or (3) as a result of a custom so ingrained in City operations as to acquired the force of official City policy. *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 690-91, 98 S. Ct. 2018, 2035-36 (1978). Libman has provided no evidence showing that the City had established any policy or custom of allowing officers to lie to obtain warrants. Libman argues that Tarpley made the decision to seek a warrant against Libman, and that he was a final policymaker for the City, so his decision, in effect, established an unconstitutional City policy. But even if that is assumed to be true, Tarpley's permission to seek a warrant was no permission to lie to obtain it. The district court did not err in granting summary judgment in favor of the City.

AFFIRMED.